HIRAM PUTNAM, *Administrator of the Estate of* LAURA PUTNAM
v. JASON W. TOWN, *Executor of* JABEZ TOWN.

*Parent and Child.    Contract.    Evidence.*

Where the relation of a parent and child exists, and the child, after coming of
age, and while in the parent's family, renders services and receives support,
the law will not imply from such relation and the rendering of such service
that there was a contract, either that the services of the child or the sup-
port furnished by the parent should be paid for.   There must be proof either
of express agreement for pay, or of such facts and circumstances as satisfac-
torily and fairly show that both parties at the time expected and understood
that the services were to be paid for.

But such proof is established by a fair preponderance of the evidence.   It is
not necessary that the proof in support of the claim for payment for such
services should be full, unequivocal and conclusive.

The entry, after the rendition of such services, by the parent upon an account
book of his opinion that his daughter was not entitled to be paid therefor,
on the ground that she had been already fully paid, is not admissible in evi-
dence in favor of his estate againt the daughter's claim made after his death.

APPEAL from the decision of commissioners upon claims against
the estate of Jabez Town.   The plaintiff's claim was for ser-
vices rendered to the testator, Jabez Town, by his daughter, Lau-
ra Putnam, the plaintiff's intestate, after she became of age, and
while she remained a member of her father's family.   The plain-
tiff introduced evidence tending to prove an agreement by Jabez
Town that the plaintiff's intestate should be paid for such services
out of his estate after his death, and the defendant introduced
testimony tending to show that there was neither any express
agreement by the father nor any understanding between him and
his daughter, that she was to be paid for such services.

The charge of the county court to the jury relative to the plain-
tiff's claim, is sufficiently recited in the opinion of the court.

To this charge the defendant excepted.

The defendant offered in evidence on trial a book in the hand
writing of Jabez Town, containing charges for articles to the
plaintiff's intestate, and another daughter, and to one of his sons,
as outfits, and on which was the following memorandum rel-
ative to the plaintiff's intestate, in his hand writing: "Laura
lived here after she was eighteen years old until she was married.

Putnam *v.* Town.

She worked for herself a good deal and I got her a good many clothes, and I gave her a great many things. So she got well paid for all she worked for me, besides what I have charged to her."

To the admission of this book as evidence, the plaintiff objected and the court excluded it, to which the defendant excepted.

*O. H. Smith* and *T. P. Redfield*, for the defendant.

*Peck & Colby*, for the plaintiff.

ALDIS, J. The court charged the jury that the burden was on the plaintiff to satisfy them by a fair preponderance of evidence, that there was a contract or mutual understanding between said Laura and her father, in pursuance of which she rendered the services, and was to be paid for them in addition to the support she received while remaining in his family: also that as the services were rendered by Laura while continuing to reside in her father's family after she was of age, and while receiving her support, and without account or charge between her and her father, no promise to pay for such services could be *implied* from such relation between them, but the promise must be found from evidence tending to show an express promise or mutual understanding of the parties that the services should be paid for.

It is claimed by the defendant that in cases of this kind, it is not enough that there should be a fair preponderance of the evidence to sustain the claim,—but that the proof should be full and plenary, unequivocal and conclusive.

Suits of this character are not unfrequently brought after the death of the parent;—often a considerable period of time has elapsed after the services were rendered, and before the claim is made. No accounts have been kept between the parties. These circumstances have led the courts to regard such claims with suspicion. Hence it has sometimes been said when such suspicious cases have pressed hard upon the court, that such claims ought to be proved by unequivocal acts, and not by loose and idle declarations. 5 Watts & Serg. 515. But we do not understand that the courts of this State have altered or intended to alter the rule

of the common law—that a fair balance of proof—a fair preponderance of the evidence for the plaintiff, will enable him to sustain his case. On the contrary in the very recent case of *Davis* v. *Goodenow*, 27 Vt. 715, Judge REDFIELD in referring to the case in 5 Watts & Serg., says that that case seems to require more than the amount of proof usually required. That case (*Davis* v. *Goodenow*) was recommitted to the auditor that he might report whether it was *satisfacto.ily shown* to him, that the parties expected at the time the services were rendered, that the plaintiff should have wages; but no instruction was given that the ordinary rule as to the amount of proof required to satisfy him should be departed from.

The cases of *The Adm. of Way, Jr.* v. *The Estate of Way*, 27 Vt. 627, *of Andrus et ux.* v. *Foster*, 17 Vt. 560, and of *Fitch* v *Peckham's Ex'r.*, 16 Vt. 150, all evidently stand upon that principle. These cases have established the important principle that where the relation of parent and child exists, and the child after coming of age, and while in the parent's family, renders services and receives support, the law will not imply from such relation and the rendering of such service, that there was a contract either that the services of the child or the support furnished by the parent, should be paid for. In ordinary cases, when the relation of parent and child or one similar to it did not exist, the law would imply that such service was to be paid for; but where such relation exists the law presumes the service to be rendered, and the support to be furnished voluntarily and without any expectation of payment by either party. Hence in such cases there must be proof, either of express agreement for pay, or of such facts and circumstances as satisfactorily and fairly show that both parties at the time expected and understood that the services were to be paid for. If the evidence tend to show this, then it is for the auditor or the jury to say, whether it does show it. In the case at bar, we think the evidence legally, though perhaps slightly, tended to show a contract. The charge of the court adopted the settled rule of law applicable to such cases. We find no error in the charge:—if there was error in the verdict of the jury it is not for us to correct it.

The book was offered by the defendant not, as we understand

the case, to prove that the articles delivered as the plaintiff's outfit, were received by her and should apply in extinguishment of her account. The defendant did not put his defence on any such ground. Upon that basis the entry of the articles on the book might well have been deemed a proper book account, and so admissible in evidence. But as we understand the exceptions, the book was offered that the entry by the deceased father upon another page following the one on which the account was charged, viz : that " Laura lived here after she was eighteen years old till she was married. She worked for herself a good deal and I got her a good many clothes, and I gave her a great many things, so she got well paid for all she worked for me, besides what I have charged to her,"—might be admitted as evidence. Clearly this was no account entered upon book in the usual way of articles delivered, or money paid, or of any proper item of book charge. It was a private entry, made, not in the usual course of business, but long after the transactions to which it referred had happened, of the opinion of the deceased as to whether his daughter was entitled to compensation for her services. Such declarations, if made by him verbally in his lifetime, could not have been proved on the trial. They would have been held mere hearsay. It gives them no greater force that he saw fit to write them as a memorandum in his book.

The entry cannot be considered as a charge in gross, as in the case of *Newell* v. *The Ex'rs. of Keith*, 11 Vt. 214.

Nor is it a memorandum against the interest of the party making it—on the contrary it is only a general statement intended to promote the interest of the party making it by denying that the plaintiff's intestate had any just debt against him.

We are not aware of any principle of law which would justify the admission of the memorandum.

Judgment affirmed.