EXECUTOR OF SHELDON DOANE *v.* SCHUYLER DOANE, AND B. E. DOANE, TRUSTEE.

*Trustee. Homestead. Trustee Process. Tenant for Life. Reversioner. Implied Contract. Parent and Child.*

The defendant claimed an equity of redemption in certain lands of which B. held the legal title. B. yielded to such claim, and, at the defendant's request, conveyed his title to the trustee, who thereupon agreed to pay, and subsequently did pay, certain of the defendant's debts charged upon the lands, but d'd not agree otherwise to account for said lands or the avails thereof, to the defendant. *Held,* under the circumstances of this case, that the trustee held title to said lands in trust for the defendant.

One holding the title to land in trust for another, and for which he is not indebted to his *cestui que trust,* cannot be made chargeable by reason thereof, in trustee process

One may have a homestead right in premises in which he has only an equitable title; and the avails of the sale of such homestead, are exempt from attachment by trustee process

Among the lands that B. conveyed to the trustee as aforesaid, was a certain piece of land which belonged to the estate of the trustee's mother, and to which the defendant never had title, except as tenant by the curtesy. There was a mortgage on said piece of land, which the trustee paid off while he held title thereto; and he subsequently sold said piece, with a portion of the other land conveyed to him as aforesaid, and the purchase-money of the whole went to pay the defendant's debts. At the time of said sale, the value of said piece was $880, and the trustee and his brother and sisters held the reversion after the termination of the defendant's life-estate. The trustee subsequently sold the remainder of the lands thus conveyed to him, and held a portion of the avails thereof in his hands, and was summoned as trustee of the defendant. *Held,* that if it belonged to the defendant. to pay off said mortgage, the trustee should be allowed for paying the same, and also the value of his share in said reversion; but if said mortgage rested upon the estate, to be taken care of by those to whom it fell, then the trustee should be allowed for paying off said mortgage, and also the value of his share in said reversion, *subject* to said mortgage, because that, and that only, moved from him, in respect to that land, to pay the defendant's debts.

The general rule is, that the tenant for life is bound in equity to pay the interest accruing on the estate during his enjoyment thereof, and the reversioners, the principal.

When a child supports the parent without express contract for remuneration, the situation and circumstances of the parties may rebut the ordinary presumption arising from the relation of the parties, and raise an implied contract for remuneration; and in this case, the circumstances were held to do so.

TRUSTEE PROCESS. The commissioner found and reported substantially the following facts:

The defendant mortgaged his farm and land in Shoreham, Vt., to one John L. Hammond, to secure the indebtedness of the defendant to said Hammond, and subsequently the defendant and. his wife conveyed all said lands to said Hammond by warranty deed, which was absolute in form, but was subsequently claimed

by the defendant to be mere security for the defendant's debt to Hammond, and Hammond afterward conveyed said lands to one Rollin Birchard, taking a mortgage back from said Birchard, to secure the indebtedness from the defendant to said Hammond. The defendant was also indebted to said Birchard, and Birchard claimed the absolute title to said lands under said deed from Hammond, and denied that the defendant had any equity of redemption therein. The defendant claimed that he still had an equity of redemption in said premises, and that the value thereof was the value of said premises, and one other piece of which said Birchard had a deed from the defendant, over and above the amount of said Hammond's debt, costs of foreclosure and interest, and the amount of the indebtedness from the defendant to said Birchard. Upon the denial of said Birchard that the defendant had any interest in said lands, and after said Birchard had brought a suit in ejectment against the defendant, the defendant brought a bill in chancery against Birchard and Hammond, setting forth the matters and things in connection with said lands, and, among other things, praying that he might be permitted to redeem said premises. Afterwards, and about the 10th of April, 1870, the defendant and Birchard had a settlement, in which it was agreed that the amount due to said Birchard from the defendant, was about $3,600 over and above the Hammond claim, which at that time amounted to about $3,680, or such a sum as amounted in September, 1870, to $3,799.73. On the occasion of that settlement, Birchard quit-claimed all of said land to the trustee, who was a son of the defendant, at the request and solicitation of the defendant, and the trustee agreed to pay to Hammond and Birchard. Ninety-one or ninety-two acres of land that were subsequently sold and conveyed by the trustee to one Stickney, at the price of about $3,652, all of which, except $52 which he applied on a debt he had against the defendant, by the permission of the trustee, Stickney paid over to Birchard, in full payment of his claim against the defendant. Said deed to Stickney covered and included a piece of land of 21 or 22 acres, which was worth $880 at that time, and which was not conveyed to the trustee by Birchard, and was purchased and paid for, in part, with five hundred dollars in bonds, inherited by Mrs. Jane Ann Doane, the wife of the defendant and mother of the trustee, from Betsey Blinn, the mother of the said Jane, and the title to said twenty-two acres was taken to, and vested in, the said Jane, upon which there was a mortgage to one Race, which amounted to the sum of $359,98, on the 12th December, 1871, and which the trustee paid after his mother's decease.

In September, 1871, the trustee sold a piece of said land conveyed to him by said Birchard as aforesaid, for $6,500, to one Moore, and $3,799.73 of said sum was required to pay said Hammond's claim on said land, and was so paid to said Hammond, leaving about $2,700 of said sum in the hands of the trustee. The pieces of land sold to Stickney and Moore, were all the land conveyed to the trustee by Birchard, except one piece of swamp land of seven acres, and the Conant lot, so called, of about twenty-six acres, both worth $700, which the trustee still possessed, and claimed to own under his deed from said Birchard. There never was any understanding between the defendant and the trustee that the trustee should account to the defendant for any of the avails of the land deeded to him by Birchard as aforesaid, other than as above stated. The trustee worked for the defendant three years, ending in 1867, on said farm, and he and his wife lived and boarded with the defendant during said time, and the trustee's wife worked in the family of the defendant, and performed such household duties and services as were required of her, and the defendant paid the trustee and his wife in full for all services and work during said three years. The trustee carried on said farm at the halves during the year next after the expiration of said three years, and lived in the same house with the defendant, allas one family, and the proceeds of the farm were consumed and used in the mutual support of the defendant and the trustee and their families. In the year 1869, and subsequently until said farm was sold to Moore as aforesaid, the trustee carried on the farm, and he and the defendant used up the proceeds and income thereof, the same as during the year the trustee carried it on at the halves, but without any special agreement or bargain as to the share or proportion each was to have of the avails thereof. No express contract or bargain was ever made between the defendant and trustee, relative to the keeping or support of the defendant by the trustee, or anything whatever said about it, either before or after said sale to Moore, and the defendant never told the trustee he should pay him anything for his support, and the trustee never told defendant he should charge him anything therefor; but the defendant lived in the family of the trustee after Sept. 1871, and did very little work after that time. The trustee has paid to the defendant and for him on account of debts incurred by him, the sum of $1,917.30, aside from the payments made as aforesaid. The premises conveyed to Moore as aforesaid, covered the defendant's homestead, upon which he had resided for many years, and up to the time Moore took possession.

The commissioner further reported :

" If from the foregoing statement of facts, the court should be of opinion that said trustee is not chargeable as trustee for the value of said seven-acre piece of land and said Conant lot, then I find the trustee's liability diminished by the sum of $700 ; leaving in his hands as trustee, in that event, only the sum of $782.97. From the foregoing facts the commissioner decides that the trustee is chargeable with the amount received for the sale of said real estate to Moore, $6,500, and also for the value of the seven-acre piece and the Conant piece of land, $700 ; making the sum of $7,200, and that there should be allowed to the trustee, and deducted from said sum, the amounts paid by him to Hammond, $3,799.73, and also said sum of $1,917.30, amounting to $5,717.03, leaving in the trustee's hands the sum of $1,482.97, belonging to the defendant, for which he is chargeable as trustee.

" I further decide, that defendant's right of homestead in said farm and premises, was extinguished by his said deed to Hammond ; that the sum of $880, realized from the sale of said twenty-two acre piece of land to said Stickney, should not be allowed the trustee, or deducted from the amount in his hands as trustee, nor any part thereof. I do not allow the trustee anything for support of his father ; and decide, from the testimony submitted, that he is not entitled to be allowed anything therefor. I find that the title to said twenty-two acre piece of land, when sold to said Stickney, was conveyed to him by the joint deed of the defendant and the trustee and his brother and sister, who constituted the only legal heirs of the said Jane."

The court, at the March term, 1873, WHEELER, J., presiding, rendered judgment against the trustee, *pro forma*, according to the report ; to which the trustee excepted.

*Ormsbee & Briggs* and *Edgerton & Nicholson*, for the trustee.

It is well settled that in order to hold a party liable as trustee, there must be such an indebtedness from the trustee to the principal defendant, as could be enforced by an action at law in favor of the principal debtor against the trustee. We insist that the case discloses such a state of facts as to negative, rather than to furnish a basis for, any liability from the trustee to the defendant which could be enforced by an action at law. No fraud is shown

on the part of the trustee or defendant. *Hoyt* v. *Swift et al. &
Tr.* 13 Vt. 129 ; *Kettle* v. *Harvey & Tr.* 21 Vt. 301.

On the supposition that the trustee is liable to account for the
avails of the lands by him sold and conveyed to Stickney and
Moore, over and above the sum paid to Hammond and Birchard,
even then we claim that he should be discharged. It is claimed
that in no event can the trustee be made chargeable in this pro-
ceeding for the value of the land remaining unsold, to wit, the
sum of $700, which is, by the report of the commissioner, made a
part of the $1,482.97 ; and if we are correct in this, there remains
a balance of $782.97 to be otherwise disposed of. *Stevens* v.
*Kirk & Trs.* 37 Vt. 204.

It is found by the commissioner as an affirmative fact, that the
land sold to Moore included the homestead of the defendant ; and
it is settled law, that the *avails* of property exempted from attach-
ment, cannot be held by trustee process ; and it is also settled,
that the trustee may avail himself of such a fact in avoiding lia-
bility, even though the claim is not made by the defendant. *Fair-
child* v. *Lampson et al. & Tr.* 37 Vt. 407 ; *Clark* v. *Averill &
Tr.* 31 Vt. 512 ; Laws of 1865, No. 14.

The case further shows, that the avails of the 21 or 22 acre
piece ($880), is included in the sum for which the trustee is made
liable ; this, too, we claim to be erroneous. This piece of land
never belonged to the defendant ; he never even had an attachable
interest in it. The receipt of the avails thereof by the trustee
could only be for the benefit and advantage of the trustee and
his brother and sister. As to the interests of the brother and
sister, it would be a resulting trust, no part of which could right-
fully be diverted for payment of the defendant's debts.

The commissioner is also in error in not allowing to the trustee
the reasonable expense of the maintenance of the defendant up to
the time of the service of the writ. There is no question made but
that there was an actual, real, and pecuniary burden to the trustee,
incident to, and connected with, this maintenance of the defend-
ant. Although the commissioner finds that there was no express
contract between the defendant and the trustee, yet, such a state
of things is disclosed that the law will imply a contract, especially

63

when an effort is being made to draw funds from the trustee, claimed by the plaintiff to belong to the defendant.

*C. H. Joyce*, for the plaintiff.

The plaintiff insists that when the trustee took the conveyance, in the manner detailed, he became thereby the trustee of the defendant for this property, or the avails of it. The conduct of the trustee, after the conveyance, is consistent with this view, and as showing how he understood it. He commenced immediately to make sales, and apply the proceeds in payment of the defendant's debts, or pay the money over to him.

The sale to Stickney included the 21 or 22 acre piece, which was not included in the conveyance from Birchard to the trustee, but which had been purchased by the defendant and his wife, and paid for in part with $500 inherited by the defendant's wife from her mother. At the time this land was deeded to Stickney, the defendant's wife had deceased, and the deed was executed by the defendant, who would have held the use of it during his life as tenant by the curtesy, and by the trustee and his brother and sister, the only heirs of their mother. If, therefore, the trustee had any interest in that piece of land as heir of his mother, he voluntarily conveyed it away at that time, and the avails of it went to pay the defendant's debt. There is no pretence that there was any agreement or understanding between the defendant and the trustee, that the defendant should ever, in any way, account to the trustee for his share, or interest, in said land. This sale to Stickney was a separate and distinct transaction, all ended and closed at the time between the parties. The plaintiff does not claim to make the trustee accountable for it, and the commissioner, taking the same view, does not hold him chargeable ; and for the same reason, he should not be allowed to deduct any portion of it from the funds in his hands received from the sale of the other property. Again, there was a mortgage on this piece of land of $359.98, which the trustee subsequently paid, and charged over to the defendant. If he considered that this land belonged to himself and his brother and sister, why not charge this payment to them, and not to the defendant ?

The two pieces of land still held by the trustee, could not be put beyond the reach of creditors. If the conveyance was not fraudulent, then the law would raise an implied promise on the part of the trustee, to pay for them. He stands here in the light of a purchaser, owing the defendant for the land he claims to own and now occupies. *Stephens* v. *Kirk & Trs.* 37 Vt. 204.

If we admit that the defendant once had a homestead right in the premises, we fail to see how it can be made available to the trustee now, as the defendant and his wife deeded it to Hammond, and the trustee now holds the money, without any contract or agreement between himself and the defendant that he should hold five hundred dollars of it as a homestead fund.

The trustee also claims payment for the support of the defendant after the conveyance of the premises to Moore. Under the facts found, no one would contend that the trustee could recover of the defendant for such support. If he could not, then he cannot deduct it when pursued as trustee. This view is fully sustained by this court in the following cases. *Fitch* v. *Peckham*, 16 Vt. 150 : *Andrus et ux.* v. *Foster*, 17 Vt. 556 ; *Admr. of Way* v. *Estate of Way*, 27 Vt. 625 ; *Putnam* v. *Town*, 34 Vt. 429 ; *Harris* v. *Currier*, 44 Vt. 468. The simple question in this class of cases is, does the evidence show, satisfactorily, that it was the expectation of the parties at the time the support was furnished or labor performed, that it was to be paid for.

The opinion of the court was delivered by

WHEELER, J. When Birchard yielded to the defendant's claim that he had an equity of redemption, and Birchard only a mortgage estate in the farm and lands, the defendant's right to the equity of redemption was well established as to all parties, and he thereafter was entitled to it, the same as if his right to it had not been disputed. And when Birchard, at the request of the defendant, conveyed the farm and lands to the trustee in this suit, the trustee took the title to the equity, in trust for the defendant, and after that time held it to his use as his trustee. And when the trustee, by sale and conveyance of the farm and lands, converted the equity of redemption into money in his hands, he held the

money as trustee of the defendant, the same as he had before held the equity of redemption. The equity of redemption was the whole estate in the land, subject to the mortgages charged upon it ; and what there was left of the whole avails of the land, after satisfying the mortgages out of the avails, was the consideration received for the equity of redemption, and stood · in the trustee's hands in lieu of it ; and so much of the avails of the equity as the trustee had received and had not parted with for the defendant at the time of the service of the writ in this case, he held then as trustee of the defendant at that time.

The whole proceeds of the land sold and conveyed to Stickney, went to pay the mortgage to Birchard, which was charged on the land, and which it was the duty of the defendant to pay, and to pay $52 which the defendant owed to Stickney, so that none of the avails of that land was in the hands of the trustee for the defendant.

The lands not sold and conveyed, and which the trustee still holds, he holds in trust for the defendant, and does not owe the trustee for. These lands are not such goods, chattels, rights, credits, or effects of the defendant in the hands of the trustee, as can be held by the trustee process. They are not goods or chattels that could be delivered over by the trustee to an officer, to be sold on execution ; nor could he be held as trustee in this action for the value of them in money, without compelling him to purchase them at that price. *Hunter* v. *Case et al. & Tr.* 20 Vt. 195 ; *Stevens* v. *Kirk & Tr.* 37 Vt. 204.

· The rest of the farm and lands the trustee conveyed to Moore, and he received therefor from Moore $6,500. · He appears to have paid the Hammond mortgage, $3,799.73, and other sums stated in the disclosure and allowed by the commissioner, to the amount of $1,917.30, for the defendant, which payments left in his hands $782.97. This sum is to be varied according to the way in which questions that have been made with reference to a part of it being due for the defendant's homestead, to the land which came from the estate of the trustee's mother, and to allowing the trustee for the defendant's support, are decided.

The report of the commissioner does not expressly state that

Executor of Doane v. Doane and trustee.

the defendant resided upon the farm up to the time when it was sold and conveyed to Moore ; but it does state that the trustee worked for the defendant on the farm three years ending in 1867, and that he and his wife lived with the defendant during that time, and that the trustee then carried on the farm one year at the halves, and that during that year, the trustee and his wife lived with the defendant in the same house, and with the defendant as one family, and used the proceeds of the farm in the mutual support of their families, and that in the year 1869, and since, until the farm was sold to Moore in September, 1871, the trustee carried on the farm, and he and the defendant used the proceeds of the farm as during the year when the trustee carried on the farm at the halves. This shows clearly, although only impliedly, that the trustee resided upon the farm, and used it as a homestead until the sale and conveyance of it to Moore. When Birchard yielded to the claim of the defendant that he had an equity of redemption in these premises, and conveyed them to the trustee in obedience to that claim, the trustee acquired the legal title only, and held that in trust for the defendant, while the defendant himself was the equitable owner of the right to redeem the premises he had resided upon and occupied as before stated. It is well settled that a homestead right. exempt from attachment, may exist in a mere equitable interest in premises occupied or used or kept as a homestead. *Morgan* v. *Stearns et al.* 41 Vt. 398. The laws of 1865, No. 14, p. 25 (Gen. Sts. p. 874), provide that no person, &c., shall be liable or chargeable on any trustee process, on account of any sum due or owing to the principal debtor for any property sold and conveyed or delivered by him, which was at the time of sale exempt from attachment and execution by the laws of this state. The trustee appears to have conveyed the farm to Moore, with the knowledge and acquiescence of the defendant ; and that conveyance, without doubt, carried to Moore the whole estate in the land, including the equitable interest of the defendant. The trustee held the legal title by force of the conveyance from the defendant to Hammond. The whole transaction amounted to a sale and conveyance by the defendant, of his homestead right in the farm. The trustee held the avails of that sale ; and so much

of those avails as he received for this homestead right, was due and owing from the trustee to the principal debtor for such right, and, according to that statute, the trustee cannot be held liable or chargeable on account of it. The amount received for that right is presumed to be $500, inasmuch as the equity of redemption in which the homestead right existed, exceeded that sum in value, and only that value in a homestead is exempt. This sum of $500, taken from the sum last before mentioned, would leave $282.97, as the largest sum for which the trustee can be held liable in any event.

The piece of land that came from the estate of the trustee's mother, appears to have been conveyed to Stickney, and the consideration for it to have been paid by him to Birchard, towards the mortgage due to Birchard from the defendant. The value of it is stated in the report at $880, and it must be presumed, in the absence of any further finding, to have been sold for that amount, and, consequently, to have paid that amount on that mortgage. This piece of land appears to have been paid for to the extent of $500, from property bequeathed to the trustee's mother, who was the defendant's wife, by her mother, and it does not appear that this part of the bequest was ever reduced to possession by the defendant or claimed by him. Nor does it appear that he ever paid anything for this land, nor even that the price of it was more than was paid out of her bequest. The title to it appears to have been conveyed to her; and, for anything that appears, it was her land. When she died, the defendant must have become entitled to a life estate in it as tenant by the curtesy, and the reversion have descended to her children, the trustee and his brother and sister. This land was subject to a mortgage to Race, which, when paid, amounted to $359.98, and was paid off by the trustee, and allowed and reckoned to him in the sum of $1,917.30 before mentioned. It does not appear from the report, to whom it belonged to pay off this mortgage. If it belonged to the defendant to do it, then the trustee has been allowed no more than he should be on account of having paid it, and there still remains his share in the reversion that has gone to pay the Birchard mortgage for the defendant, that he has not been allowed for, and he is entitled to

be allowed a further sum, equal in amount to the value of that share. If it did not belong to the defendant to pay the Race mortgage, but it rested upon the estate, to be taken care of by those to whom it fell, then the trustee should be allowed, in addition to what he has been allowed, the value of his share in this land, subject to his share of the Race mortgage, because that, and that only, moved from him, in respect to this land, to pay the Birchard mortgage. As to how much of the Race mortgage his share in the reversion should bear, if any, the general rule is, that the tenant for life is holden in equity to pay the interest accruing during his enjoyment of the estate, and that the reversioners are holden to pay the principal. It does not yet appear in this case how much of the sum paid on this mortgage was interest, nor how long the defendant as life tenant enjoyed the life estate. Nor does the value of the trustee's reversion in this land, either clear of, or subject to, this mortgage, appear. Consequently, the amount proper to be deducted from the sum mentioned in the hands of the trustee that he can in any event be holden for, cannot be ascertained till further facts are reported.

As to the claim that the trustee should be allowed for the support of the defendant, it appears from the report that he has furnished such support since the sale to Moore, in September, 1871. The commissioner further reports, that no express contract was ever made between them about it, and that the defendant never told the trustee he should pay, nor the trustee the defendant he should charge, anything for it; and he decides that the trustee is not entitled to be allowed anything for it, and allows nothing for it accordingly. Up to the time of the sale of the farm, the trustee does not appear to have been supporting the defendant, any more than the defendant was the trustee; therefore, the support furnished was not the mere continuation of support which had been furnished without charge, according to the understanding of the parties, nor under circumstances such that the law would not allow any charge to be enforced. The trustee had means in his hands belonging to the defendant, and with which, if paid over, the defendant could procure his own support. The trustee furnished the support, and these circumstances would help the implication

that it was to be paid for. There is nothing to rebut that implication, but the relationship ; and the case shows that as to other matters, they dealt as debtor and creditor, and the relationship, of itself, does not seem to be sufficient to single out this matter of valuable transaction, and to show that it was not to be reckoned between them. Under the circumstances, it seems that this support should be allowed to the trustee from the time of the sale to Moore, in September, 1871, to the date of the writ, February 12th, 1872.

The judgment must therefore be reversed, and the cause recommitted to the commissioner, to report the value of the trustee's share in the land inherited from his mother ; the facts in relation to the mortgage upon it ; and the value of the support furnished. Judgment reversed, and, at request of parties, cause remanded.